UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

SHADRON RAMBERT,

                         Plaintiff,

               v.

C.O.M. MULKINS, *et al.*,

                         Defendants.

------------------------------------------------------ X

11 Civ. 7421 (KPF)

OPINION AND ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 30, 2014

KATHERINE POLK FAILLA, District Judge:

On October 3, 2011, Plaintiff, who is proceeding *pro se* and *in forma pauperis* and is currently incarcerated, initiated the instant action under 42 U.S.C. § 1983, alleging violations of his constitutional rights stemming from a July 15, 2011 altercation at the Downstate Correctional Facility. Specifically, Plaintiff alleges that his Eighth Amendment rights were violated when Correctional Officers Michael Mulkins, George Santiago, and James Todd physically assaulted him, while Commander Thomas Quackenbush, Sergeant Larry Brown, Officer Donald Cosmin, and Officer Craig Crawford looked on and failed to intervene.[1] Defendants Mulkins, Santiago, Todd, Quackenbush, Brown, Cosmin, and Crawford have moved to dismiss the Complaint based on

---

[1]    Superintendent Ada Perez was named as a Defendant in the Complaint and First Amended Complaint ("FAC"), but not in the operative Second Amended Complaint ("SAC"). More to the point, Plaintiff has yet to serve Superintendent Perez, despite having been granted numerous opportunities, and more than two years, to do so. Accordingly, the Court dismisses the claims asserted against Superintendent Perez without prejudice, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

Plaintiff's purported failure to administratively exhaust his claims as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e.  For the reasons discussed in the Opinion, their motion is converted to one for summary judgment, and is granted.

### BACKGROUND[2]

#### A.     Factual Background

##### 1.     Plaintiff's July 7, 2011 Grievance

On July 7, 2011, Plaintiff filed a grievance, numbered DSR-12435-11, with the Downstate Correctional Facility ("Downstate") in Fishkill, New York, where Plaintiff was housed at that time, complaining of numerous instances of verbal harassment by at least two unnamed correctional officers.  (Kim Decl. Ex. A 1-2, 6, 16).[3]  On July 13, 2011, Plaintiff received a response from "S. Hughes," the Inmate Grievance Process ("IGP") Supervisor at Downstate,

---

[2]     Defendants' motion to dismiss is based solely on Plaintiff's alleged failure to exhaust his administrative remedies, and not on the merits of his claims.  In connection with that motion, both parties have submitted matters outside the pleadings related to Plaintiff's alleged failure to exhaust his administrative remedies.  For the reasons discussed throughout, the Court exercises its discretion to convert Defendants' motion to dismiss to a motion for summary judgment.  Accordingly, the facts alleged herein are drawn from the Complaint, the FAC, the SAC, and the materials submitted to the Court by both parties that the Court may properly consider in connection with this motion.  Those materials include the Declaration of Karen Bellamy ("Bellamy Decl.") and the exhibit attached thereto; the Declaration of Mary Kim ("Kim Decl.") and the exhibit attached thereto; and the materials attached as Exhibit A to Plaintiff's opposition papers ("Pl. Opp. Ex. A").  The Court has adopted the mode of pagination employed by the Court's electronic filing system in citing to Plaintiff's submissions.

For convenience, Defendants' moving papers will be referred to as "Def. Br."; Plaintiff's opposition as "Pl. Opp."; Defendants' reply as "Def. Reply"; and Plaintiff's Sur-reply as "Pl. Reply."  Transcripts of proceedings occurring before the Court in 2013 will be referred to using the convention "[Date] Tr."

[3]     Plaintiff subsequently represented to the Court that Defendant Mulkins was one of the officers who had verbally harassed him.  (Dec. 30 Tr. 8).  Downstate has no record of this grievance, but Defendants do not contest that Plaintiff submitted it.  (*Id.* at 2-3).

directing Plaintiff to provide the names of the harassing officers, as well as additional details regarding the harassment.  (*Id.* at 7).  Plaintiff contends that he submitted an additional "grievance to S. Hughes of which [Plaintiff] never received a response and [] wasn't able to retain a copy."  (*Id.* at 2; Pl. Opp. 1-2). In opposing the instant motion, Plaintiff now contends that he submitted this supplemental grievance on July 14, 2011.  (Pl. Opp. 1).[4]  Significantly, however, Plaintiff does not allege that he appealed the July 7, 2011 grievance to the superintendent of Downstate or to the Department of Corrections and Community Supervision's ("DOCCS") Central Office Review Committee ("CORC").[5]  CORC's records similarly reflect that Plaintiff did not appeal this grievance to CORC.  (Bellamy Decl. ¶¶ 3-5).

### 2.     The July 15, 2011 Incident

On or about July 15, 2011, Plaintiff was called out of his cell to receive "psychotropic" medication.  (SAC 2; FAC 2).  Plaintiff was then punched and

---

[4]     The Court ordinarily may not consider factual allegations contained in opposition papers to a motion to dismiss unless they are consistent with those contained in the complaint.  *See Friedl* v. *City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000).  Because this allegation is at the very least not inconsistent with the factual allegations contained in the various complaints, and because the Court will convert this motion to one for summary judgment, the Court accepts as true for purposes of this Opinion Plaintiff's allegation that he submitted a second grievance on July 14, 2011.

The Court notes that many of the documents, allegations, and materials submitted by Plaintiff in opposition to this motion have not been authenticated and are not in the proper evidentiary form.  (*See generally* Pl. Opp. Ex. A).  However, in order to read *pro se* Plaintiff's allegations to raise the strongest arguments they suggest, the Court has considered these materials in connection with this motion.

[5]     Somewhat confusingly, Plaintiff previously argued to the Court that his August 2, 2011 and August 9, 2011 letters to Superintendent Perez functioned as a continuance of the July 7, 2011 grievance, but not an appeal of those grievances:

MR. RAMBERT: Once I got assaulted, I got thrown in the SHU [Secure Housing Unit], so I never — I followed up with the [July 7, 2011] grievance and then I started writing to the superintendent

thrown to the ground by Defendant Michael Mulkins, and was punched, hit with a baton, kicked, and had his legs and arms twisted by Defendants Mulkins, Santiago, Todd, and two unnamed officers who are not parties to this action.  (SAC 2-3; FAC 2-6).  Defendants Quackenbush, Brown, Cosmin and Crawford were present during the assault, but failed to intervene.  (SAC 3; FAC 2-5).

    As a result of the July 15 incident, Plaintiff suffered "substantial swelling" and bruising to the right side of his face, a "blood clot" in his left eye, "tendonitis with substantial left shoulder pain," and substantial pain in his left ankle.  (SAC 3).  Plaintiff contends that "[t]he nurse at the time didn't treat me for anything."  (*Id.*).

---

letting her know that I was writing grievances, and I was asking her to basically regard my letter as a grievance because I wasn't hearing anything back from Hughes prior to the incident, and I explained that incident to her, the actual assault, the basis of this claim there.  So I was deeming that as a grievance because no one was responding to me.

THE COURT:  I'm sorry.  I want to make sure I understand what you're saying.  Are you saying that because you had an open grievance, you were asking those who were reviewing the grievance to consider the later-occurring assault to be part of the same grievance?

MR. RAMBERT:  Yes.  Yes.

(Dec. 30 Tr. 8-9).

Yet Plaintiff elsewhere alleges that the August 2, 2011 letter was intended as a new grievance of the July 15, 2011 incident.  (*See* Kim Decl. Ex. A 1-2 (referring to the August 2 and August 9 letters as "letters/grievances"); Pl. Opp. 2-3 (referring to the August 2 letter as an "actual grievance"; describing the August 2 and August 9 letters as grievances of "the assault by defendants")).  This discrepancy, however, is immaterial because Plaintiff's letter to Superintendent Perez, in any case, did not constitute a Level 1 grievance of the July 15, 2011 incident.

### 3.      Plaintiff's Attempts to Grieve the July 15, 2011 Incident

After the July 15 incident, Plaintiff was placed in the Secure Housing

Unit ("SHU") for a period of time.  (Kim Decl. Ex. A 1-2).  There, Plaintiff was

subject to a deprivation order, which prohibited him from possessing writing

instruments for some period of time.  (*Id.* (Plaintiff alleging that he was

prohibited from "writing anything to anyone as I was not allowed to possess

any writing instruments, paper, etc. for several days."); Dec. 30 Tr. 7 (Plaintiff

alleging that the period was seven days)).  Plaintiff was charged with assaulting

staff in connection with the July 15, 2011 incident, and was later found guilty

of that charge at a Tier III disciplinary proceeding, which was conducted by

Lieutenant Oliver, and at which Plaintiff conducted his own defense.  (Dec. 30

Tr. 5-6; Pl. Opp. Ex. A 36). [6]  Plaintiff filed an Article 78 proceeding in New York

State Supreme Court in January 2012 to appeal from the determination of the

---

[6]      "In the New York Prison System, Tier III disciplinary hearings, also known as
Superintendent's hearings, are used for the review of the most serious violations of
institutional rules."  *Walker* v. *Bates*, 23 F.3d 652, 654 (2d Cir. 1994) (citing 7
N.Y.C.R.R. § 270.3); *see also Hynes* v. *Squillace*, 143 F.3d 653, 659 n.1 (2d Cir. 1998)
("Tier III hearings concern the most serious violations and may result in unlimited SHU
confinement (up to the length of the sentence) and recommended loss of 'good time'
credits.").

This is a separate, and unrelated, process from the IGP, and any complaints related to
staff misconduct arising from the incident that prompted the disciplinary hearing must
be grieved separately.  *See, e.g.*, *Scott* v. *Gardner*, 287 F. Supp. 2d 477, 489 (S.D.N.Y.
2003) (holding that although the plaintiff completed the disciplinary appeal process
with regard to a misbehavior report, the plaintiff had not exhausted his administrative
remedies because he had not filed a separate grievance, and noting that "allegations of
staff misconduct related to the incidents giving rise to the discipline must be grieved"
(citing *McCoy* v. *Goord*, 255 F. Supp. 2d 233, 256 (S.D.N.Y. 2003) (holding that the
plaintiff's contention that he exhausted his administrative remedies because he
appealed a disciplinary hearing was without merit, and that "[a]n appeal of the
disciplinary hearing determination does not satisfy the PLRA's exhaustion requirement"
(internal citation omitted))).

disciplinary hearing, and that proceeding is still ongoing.  (SAC 6; Nov. 13 Tr. 6-7).

At some point after the deprivation order was lifted, on or about August 2, 2011, Plaintiff wrote to Superintendent Ada Perez to complain about the Tier III disciplinary proceeding, as well as the July 15 incident itself.  (Kim Decl. Ex. A 2-3).  Plaintiff's intent was to "explain[] what was going on in regards to what transpired before and after the assault and the assault itself.  The purpose of those letters directly to Ada Perez was because I had not been receiving any adequate action or responses from the IGP at Downstate."  (*Id.*).

The August 2, 2011 letter[7] pertained almost exclusively to Plaintiff's Tier III disciplinary hearing and, in particular, his belief that the hearing was partial because the evidence had weighed in his favor; Plaintiff also complained that he had not been permitted to mount a proper defense.  (*See* Pl. Opp. Ex. A 34-43).  Plaintiff asked Superintendent Perez to investigate the July 15 incident and drop the disciplinary charges levied against him, even though Plaintiff would continue to "go through the proper channels" to appeal the Tier III decision to Albany.  (*Id.*).  While Plaintiff contends that this letter functioned as his grievance of the July 15, 2011 incident, the letter does not purport to be a grievance of that incident, and in fact only mentions the word "grieve" once.

---

[7]    The Court directed Plaintiff on November 13, 2013, to provide copies of all documents in his custody related to the exhaustion of his administrative remedies to counsel for Defendants.  (Nov. 13 Tr. 9-11).  Plaintiff did so on November 19, 2013.  (Dkt. #53).  Plaintiff reported at that time that he did not retain a copy of the August 2, 2011 letter.  (Kim Decl. Ex. A 2-3).  Plaintiff provided this letter for the first time in opposition to this motion.  (Pl. Opp. Ex. A 34-43).

(SAC 3-4; Kim Decl. Ex. A 1-2; Pl. Opp. Ex. A 38 ("It would have made no sense at all to grieve and report prior incidents to several officials if I knew I was intending on assaulting [Officer Mulkins].")).  Notably, the letter announces no intention to grieve the July 15 incident, and instead pertains to Plaintiff's dissatisfaction with, and appeal from, his separate and unrelated Tier III disciplinary hearing.  Accordingly, a representative from Superintendent Perez's office responded on August 9, 2011, noting that Plaintiff's letter dated August 2, 2011, had been forwarded to "Albany as an appeal to [Plaintiff's] Tier 3 [hearing] conducted by Lt. Oliver."  (SAC 4; Kim Decl. Ex. A 3, 10).

While Plaintiff has provided differing accounts of when and how frequently he wrote to CORC, it is undisputed that Plaintiff wrote to CORC on March 18, 2012.  Plaintiff alleged that, after he was transferred to the Southport Correctional Facility, Plaintiff wrote to CORC in March 2012 to note that he had yet to receive a response to his July 2011 grievances, and to report that he believed his assault and placement in segregation were in retaliation for his use of the grievance process.  (Kim Decl. Ex. A 3-4, 11-12).  The FAC corroborates this assertion, as do Plaintiff's previous representations to the Court.  (*See* FAC 7 (alleging, as of March 6, 2012, "[I] am *currently in the process* of writing to CORC to inquire as to if they are going to let me know anything in regards to this matter." (emphasis added)); Dec. 30 Tr. 7-8 (Plaintiff noting that when he wrote CORC, he received a copy of his letter back); Kim Decl. Ex. A 11-15 (March 18, 2012 letter to CORC; copy of March 18, 2012 letter marked as received by CORC on March 23, 2012); Pl. Opp. Ex. A 27-31

(March 18, 2012 letter to CORC; copy of March 18, 2012 letter marked as received by CORC on March 23, 2012)).  Plaintiff submitted copies of these March 2012 letters to Defendants in November 2013, and again in connection with his opposition to this motion.  (*See id.*).

Plaintiff received a response to his March 18, 2012 letter in August 2012 from Karen Bellamy, the director of the IGP at DOCCS.  (SAC 5; Kim Decl. Ex. A 3-4, 16; Pl. Opp. Ex. A 32).  Bellamy wrote that "[c]ontact with the facility administration at Downstate Correctional Facility reveals that you filed one grievance in 2011; DSR-12435-11, alleging staff misconduct, [which] was answered by the Superintendent on September 26, 2011, and you did not appeal."  (Kim Decl. Ex. A 16).[8]  Bellamy closed by noting that the IGP "makes no provision for an inmate to refer grievances directly to the Central Office [i.e., CORC].  You are advised to address any further grievance concerns directly to the IGP Supervisor at the facility where the grievance was filed."  (*Id.*).  Plaintiff contends that he "did comply with that advice" by writing on March 28, 2012 to the IGP Supervisor at the Downstate Correctional Facility.  (SAC 5; Kim Decl. Ex. A 3-4, 17 (letter from Plaintiff to the Inmate Grievance Resolution

---

[8]      In opposition, Plaintiff alleges that he was not incarcerated at Downstate on September 26, 2011, and argues that a September 26, 2011 response, whether to Plaintiff's July 7, 2011 grievance or to his August 2, 2011 or August 9, 2011 letters, was untimely.  (Pl. Opp. 5, Ex. A 39).  First, Plaintiff does not dispute Defendants' contention that the September 26 letter responded to Plaintiff's July 7 grievance, which predated the incident complained of herein.  Second, the Superintendent's delay in responding did not relieve Plaintiff from the obligation of timely appealing to CORC, which he did not do.  *See* n.10, *infra.*

Committee ("IGRC") at Downstate Correctional Facility, dated March 28, 2012); Pl. Opp. Ex. A 17 (same)).

For the first time in opposition to this motion, Plaintiff now alleges that he wrote to CORC on September 5, 2011, as an appeal from his August 2, 2011 "grievance," to which he had received no response from Superintendent Perez. (Pl. Opp. 3). Plaintiff also produced a copy of what he contends to be the September 5, 2011 letter, but has produced no response from CORC to that letter, or proof that CORC received that letter, as he did for his March 18, 2012 letter. (Pl. Opp. Ex. A 40-42). Defendants have expressed skepticism at Plaintiff's newly-recalled allegation and newly-discovered evidence, which is contradicted by Plaintiff's previous representations to the Court and to Defendants. (*See* Def. Reply 6 & n.3; *but see* Pl. Reply 1-2 (decrying Defendants' statement as "preposterous")). Nonetheless, in order to raise the strongest arguments Plaintiff's submissions suggest, the Court accepts as true for the purposes of this Opinion Plaintiff's allegation that he submitted the September 5 letter to CORC.

In the September 5 letter, Plaintiff informed CORC that he was "writing [] as an appeal from several grievances that I wrote while at Downstate Correctional Facility"; that he had written to Superintendent Perez on August 2, 2011, and August 9, 2011; that his August 2, 2011 letter had been forwarded to Albany; and that Superintendent Perez had not responded to his August 9, 2011 letter. (Pl. Opp. Ex. A 40). Plaintiff asked CORC to "look [] into" the matter of his July 15, 2011 assault, since "I did not assault any

officers but was rather myself assaulted." (*Id.*).  Plaintiff also noted that he had spoken with Superintendent Perez about this, and she had promised to "investigate such matter after I'd gotten the Tier III hearing disposition but they never did"; Plaintiff closed by "requesting that [CORC] get back to me concerning this matter." (*Id.*).  That letter did not attach the required Form #2133, "Notice of Intent to Appeal."  Moreover, CORC's records again reveal that Plaintiff did not appeal any grievance to CORC in connection with this incident.  (Bellamy Decl. ¶¶ 3-5).  In fact, the only grievance Plaintiff has ever appealed to CORC was a 2012 grievance related to a lack of medical care.  (*Id.*).

## B.    Procedural Background

Plaintiff initiated this action on October 3, 2011, alleging that he was "assaulted and/or harassed" on July 15, 2011, by various defendants, a group that included "all employees of Downstate Correctional Facility." (Dkt. #1).  Pursuant to an Order to Amend dated January 13, 2012 (Dkt. #5), Plaintiff filed the First Amended Complaint on March 8, 2012, alleging that the Defendants named herein and various John Doe defendants assaulted him on July 15, 2011; Plaintiff also alleged claims against Superintendent Perez.  (Dkt. #7).  Plaintiff then filed the Second Amended Complaint on November 13, 2012 (Dkt. #17), which omitted his previous claims against Superintendent Perez, *see* n.1, *supra.*

After a number of extensions of the time in which to do so, Plaintiff served Defendants, with the exception of Superintendent Perez, by September 2013.  On October 11, 2013, Defendants filed a pre-motion letter in connection

with their anticipated motion to dismiss.  (Dkt. #45).  At the pre-motion conference held on November 13, 2013, Plaintiff contended that he had exhausted his administrative remedies by writing to Superintendent Perez, DOCCS, and CORC.  (*See* Dkt. #50; Nov. 13 Tr. 5-7).  On November 19, 2013, at the Court's direction, Plaintiff submitted to Defendants a "narrative" of his attempts to exhaust his administrative remedies, along with all documents in his custody related to exhaustion; that narrative is attached as Exhibit A to the Declaration of Mary Kim.  (Dkt. #51, 53; Kim Decl. Ex. A).

At a subsequent conference held on December 30, 2013, Defendants renewed their desire to move to dismiss, and reported that the materials Plaintiff had submitted made clear that he had not yet exhausted his administrative remedies.  (Dkt. #52, 53, 54).  Accordingly, pursuant to the briefing schedule endorsed by the Court, Defendants moved to dismiss on January 17, 2014 (Dkt. #55); Plaintiff filed his opposition on February 14, 2014 (Dkt. #59); and the motion was fully submitted as of the filing of Defendants' reply on March 19, 2014 (Dkt. #60).

On March 31, 2014, Plaintiff requested an opportunity to submit a sur-reply within 30 days, or by April 30, 2014.  (Dkt. #61).  Though the Court normally does not permit the filing of sur-replies, the Court granted Plaintiff's request.  (Dkt. #62).  However, when Plaintiff subsequently requested an additional 30 days within which to submit his sur-reply, the Court denied that request.  (Dkt. #64).  Nonetheless, Plaintiff filed a sur-reply on May 12, 2014. (Dkt. #65).  The Court will now consider Defendants' motion to dismiss.

11

## DISCUSSION

### A.   Applicable Law

#### 1.   The PLRA's Exhaustion Requirement

Defendants have moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or alternatively, for summary judgment pursuant to Rule 56, on the grounds that Plaintiff has failed to exhaust his administrative remedies.  The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter* v. *Nussle*, 534 U.S. 516, 532 (2002) (internal citation omitted); *see also Woodford* v. *Ngo,* 548 U.S. 81, 90 (2006) ("[P]roper exhaustion ... means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (emphasis in original, internal quotation marks and citation omitted)).  "Failure to exhaust is an absolute bar to an inmate's action in federal court."  *George* v. *Morrison-Warden*, No. 06 Civ. 3188 (SAS), 2007 WL 1686321, at *2 (S.D.N.Y. June 11, 2007); *accord Burgos* v. *Craig,* 307 F. App'x 469, 470 (2d Cir. 2008) (summary order) ("[Exhaustion] must be completed before suit is filed." (internal citation omitted)).  Lastly, failure to comply with the PLRA's exhaustion requirement is an affirmative defense, on which the

defendant bears the burden of proof.  *Jenkins* v. *Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999).

Thus, prior to bringing suit in federal court, a prisoner must exhaust the administrative grievance process set forth in the applicable state regulations. *Jones* v. *Bock*, 549 U.S. 199, 218-19 (2007).  In New York State, DOCCS has established a three-tiered inmate grievance procedure.  *See* 7 N.Y.C.R.R. § 701.5.  First, the prisoner files a grievance with the IGRC within 21 days of the incident.  *Id.* § 701.5(a).  Second, the prisoner may appeal from an adverse IGRC decision to the facility superintendent within seven days of the IGRC decision, and must complete and sign the appeal section on Form #2131 before submitting it to the superintendent.  *Id.* § 701.5(c).  Third, the prisoner may appeal an adverse decision by the superintendent to CORC, by completing a Form #2133 "Notice of Intent to Appeal," and submitting it to the grievance clerk within seven calendar days after receipt of the superintendent's written response to the grievance.  *Id.* § 701.5(d).  "[M]atters not decided within the time limits may be appealed to the next step" of the grievance process.  *Id.* § 701.6.

Grievances alleging harassment by prison personnel are subject to an alternative, expedited review process.  First, as with the regular grievance process, a prisoner must submit a grievance to the IGRC within 21 days of the incident.  *See* 7 N.Y.C.C.R. § 701.8(a).  The grievance is then referred to the superintendent by the end of the day, who must determine whether the grievance presents a case of bona fide harassment.  *Id.* § 701.8(b)-(c).  If it does

not, the superintendent will refer the grievance back to the IGRC for normal processing; if it does, the superintendent must order an investigation, and render a decision within 25 days after the grievance is filed. *Id.* § 701.8(c). To appeal the superintendent's decision, a prisoner must file a "Notice of Intent to Appeal" with the IGRC within seven days of the superintendent's response. *Id.* § 701.8(h). If the superintendent does not respond within 25 days, the prisoner may appeal to CORC by filing a Form #2133 "Notice of Intent to Appeal." *Id.* § 701.8(g). Thus, whether a grievance is processed as a general grievance or a harassment grievance, the first and last steps are identical to those required by the general grievance process: first, submission of a grievance to the IGRC, and last, appeal to CORC. *Id.* §§ 701.5, 701.8.

### 2.    Conversion of a Rule 12(b)(6) Motion into a Rule 56 Motion

A court may dismiss a complaint under Rule 12(b)(6) for failure to exhaust only where non-exhaustion is clear from the face of the complaint. *See Kasiem* v. *Swift*, 756 F. Supp. 2d 570, 574 (S.D.N.Y. 2010) (citing *Jones*, 549 U.S. at 919). However, if non-exhaustion is not clear from the face of a complaint, a court should convert the motion into a Rule 56 motion for summary judgment, "limited to the narrow issue of exhaustion and the relatively straightforward questions about ... whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused." *McCoy*, 255 F. Supp. 2d at 251.

A district court must afford "prior notice to the parties before converting [a] motion to dismiss into a motion for summary judgment." *Beacon*

14

*Enterprises, Inc.* v. *Menzies*, 715 F.2d 757, 767 (2d Cir. 1983). "Notice is particularly important when a party is proceeding *pro se* and may be unaware of the consequences of his failure to offer evidence bearing on triable issues." *Id.*; *see also* Fed. R. Civ. P. 12(d) ("[I]f on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

### 3. Summary Judgment Generally

Under Fed. R. Civ. P. 56(a), summary judgment may be granted only if all the submissions taken together "show[] that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may discharge this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

15

burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan* v. *N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (finding summary judgment appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial" using affidavits or otherwise, and cannot rely on the "mere allegations or denials" contained in the pleadings.  *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright* v. *Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal quotation marks omitted), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles* v. *General Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)).  Furthermore, "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher* v. *Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotation marks and citations omitted)).

### 4.     Summary Judgment in *Pro Se* Cases

When considering a motion for summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson* v. *Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010) (citing *LaSalle Bank Nat'l Ass'n* v. *Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005)).  In a *pro se* case, the Court must go one step further and liberally construe the party's pleadings "to raise the strongest arguments that they suggest." *McPherson* v. *Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos* v. *Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

Nonetheless, a *pro se* litigant must still be held to the normal requirements of summary judgment, and "bald assertion[s]," unsupported by evidence, will not overcome a motion for summary judgment.  *See Carey* v. *Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Stinson* v. *Sheriff's Department*, 499 F. Supp. 259, 262 (S.D.N.Y. 1980) (holding that the liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended").

## B.     Application

### 1.     The Court Will Convert the Rule 12(b)(6) Motion into a Rule 56 Motion

The Court first considers whether non-exhaustion is clear from the face of the complaint, and finds that it is not.  Plaintiff has alleged that he filed a grievance with Downstate, with no result.  (SAC 4-5).  When asked to describe the steps he took to appeal that decision, Plaintiff responded, "I wrote to [the]

Department of Correctional and Community Supervision expressing that I had not heard an[y] response to my Grievance(s).  I also filed an 'Article 78' to the Supreme Court in Albany County."  (*Id.*).  Plaintiff later alleges that he wrote to Superintendent Perez on several occasions.  (*Id.* at 4).  In short, the SAC plausibly suggests that Plaintiff completed the first two steps of the IGP, but not the third: nowhere does Plaintiff allege that he appealed his grievance to CORC.

Accordingly, because non-exhaustion is not apparent on the face of Plaintiff's complaint, and because both parties have submitted matters outside the pleadings in connection with this motion, the Court exercises its discretion to convert Defendants' motion to dismiss on this limited issue to a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and thus considers materials beyond the scope of the pleadings. *See, e.g.*, *Bennett* v. *Wesley*, No. 11 Civ. 8715 (JMF), 2013 WL 1798001, at *2-3 (S.D.N.Y. Apr. 29, 2013) (converting a Rule 12(b)(6) exhaustion motion into a Rule 56 motion); *Williams* v. *Metro. Det. Ctr.*, 418 F. Supp. 2d 96, 101-02 (E.D.N.Y. 2005) (same).

Moreover, conversion is proper because Defendants provided Plaintiff with notice that the Court might treat Defendants' motion to dismiss as a motion for summary judgment, and informed him that if he did not respond "by filing sworn affidavits and other papers as required by Rule 56(e)," his "COMPLAINT MAY BE DISMISSED."  (Dkt. #56).  *See Hernandez* v. *Coffey*, 582 F.3d 303, 308 n.2 (2d Cir. 2009) (citing cases finding that a Local Rule 12.1

Notice provides sufficient notice to *pro se* parties).  Lastly, Plaintiff himself has submitted numerous materials outside of the pleadings in connection with this motion.

### 2.    Plaintiff Failed to Exhaust His Administrative Remedies

The Court next considers whether, in light of the materials submitted by both parties, there is any disputed issue of material fact as to whether Plaintiff has exhausted his administrative remedies.  Plaintiff has submitted a number of materials to the Court in connection with this motion; these materials, he contends, reveal that he has in fact exhausted his administrative remedies.  However, these materials reveal the exact opposite.

The first step of the IGP is to submit a Level 1 grievance to the IGRC.  Plaintiff has submitted a copy of only one grievance to the Court, dated July 7, 2011; because this grievance (and the July 14, 2011 grievance Plaintiff alleges he submitted in further support) predate the July 15 incident, they cannot serve as grievances of that incident.  (*See* Kim Decl. Ex. A. 6; Pl. Opp. 2 ("On July 7, 2011 plaintiff filed a grievance at Downstate alleging misconduct by prison officer(s).  In response to plaintiff's grievance the IGRC requested plaintiff to provide more details of the misconduct by prison officer(s).  Plaintiff did respond to the IGRC, on July 14, 2011, providing additional information.")).

Importantly, Plaintiff does not allege that he grieved the July 15 incident in July 2011.  Instead, he contends that his August 2, 2011 letter to Superintendent Perez, which was submitted for the first time in opposition to this motion, functioned as his grievance of those issues.  (Pl. Opp. 3-4 (the

19

August 2 letter was "an actual grievance")).[9]  Putting aside the fact that the

August 2 letter pertains to Plaintiff's Tier III disciplinary hearing, and does not

even purport to be a grievance of the July 15 incident, IGP regulations clearly

require a prisoner to submit a grievance in the first instance to the IGRC, not

the Superintendent.  *See* 7 N.Y.C.R.R. §§ 701.2 ("A letter addressed to facility

or central office staff *is not a grievance*." (emphasis added)), 701.5, 701.8; *see*

*also Byas* v. *State of New York*, No. 99 Civ. 1673 (NRB), 2002 WL 1586963, at

*2 (S.D.N.Y. July 17, 2002) (collecting cases noting that letters submitted to a

superintendent do not constitute grievances, and noting that "[p]ermitting a

plaintiff to bypass the codified grievance procedure by sending letters directly

to the facility's superintendent would undermine the efficiency and the

effectiveness that the prison grievance program is intended to achieve").  On

this basis, Plaintiff's August 2, 2011 letter could not have served as a Level 1

grievance of the July 15 incident.[10]  *See, e.g.*, *Macias* v. *Zenk*, 495 F.3d 37, 44

---

[9]     Plaintiff argues in opposition that his August 2, 2011 letter functioned as a grievance
pursuant to the expedited process for harassment grievances.  (Pl. Opp. 4.)  Plaintiff
misunderstands the grievance processes.  As noted *supra*, both processes require the
prisoner to submit his grievance in the first instance to the IGRC, not the
Superintendent.  *See also Hemphill* v. *New York*, 380 F.3d 680, 689-90 (2d Cir. 2004)
(observing that "inmates seeking expedited review of employee misconduct grievances
are required to file a level 1 grievance as prescribed by 7 N.Y.C.R.R. § 701.7(a), and []
complaining to the employee's immediate supervisor is 'not a prerequisite for filing a
grievance with the IGP'"; noting that "[a]s amended, section 701.11(b)(1) confirms
DOCS's view, at issue in this appeal ... that a prisoner cannot obtain the expedited
review provided by section 701.11 *without first submitting a formal grievance pursuant to
7 N.Y.C.R.R. § 701.7(a)(1)*" (emphasis added)).

[10]    Even if Plaintiff received no response to his grievance at any stage of the IGP process, he
was nonetheless obligated to continue on in that process.  *See Garcia* v. *Heath*, No. 12
Civ. 4695 (CM), 2013 WL 3237445, at *5 (S.D.N.Y. June 25, 2013) ("[C]ourts have
recognized that a prisoner who receives no response to a § 701.5 grievance must file an
appeal within a reasonable time."); *Hecht* v. *Corr. Officer Best*, No. 12 Civ. 4154 (CM),
2012 WL 5974079, at *3 (S.D.N.Y. Nov. 28, 2012) (plaintiff was obligated to appeal to
CORC "within a reasonable period of time" after failing to get a response from the

(2d Cir. 2007) (merely alerting prison officials as to the nature of the wrong for which redress is sought does not constitute proper exhaustion); *Simon* v. *Campos*, No. 09 Civ. 6231 (PKC), 2010 WL 1946871, at *6 (S.D.N.Y. May 10, 2010) (letter to facility superintendent and oral complaints insufficient to satisfy exhaustion requirement); *Harrison* v. *Goord*, No. 07 Civ. 1806 (HB), 2009 WL 1605770, at *8 (S.D.N.Y. June 9, 2009) (verbal grievances and letters to the facility superintendent, commissioner of DOCS, and others insufficient to satisfy exhaustion requirement); *Lashley* v. *Artuz*, No. 01 Civ. 11542 (SAS), 2004 WL 1192090, at *3 (S.D.N.Y. May 27, 2004) (noting that "[c]ourts have repeatedly held that complaint letters to the DOCS Commissioner or the facility Superintendent do not satisfy the PLRA's exhaustion requirements" (internal quotation marks and citation omitted)).

The final step of the grievance process is to appeal to CORC, by submitting Form #2133 "Notice of Intent to Appeal."  Prior to filing his opposition to this motion, Plaintiff contended that he first wrote to CORC in March 2012, and produced copies of that correspondence to Defendants as of November 2013.  (*See generally* Kim Decl. Ex. A 11-15; FAC 7 (as of March 6, 2012, "[I] am *currently in the process* of writing to CORC to inquire as to if they are going to let me know anything in regards to this matter." (emphasis added)).  Such a communication is plainly untimely, as it occurred more than eight months after the July 15 incident and, more importantly, five months

---

superintendent (internal citations omitted)); *JCG* v. *Ercole*, No. 11 Civ. 6844 (CM) (JLC), 2014 WL 1630815, at *7 (S.D.N.Y. Apr. 24, 2014) (same).

after the initiation of Plaintiff's action in this Court.  *See Burgos*, 307 F. App'x at 470 ("[Exhaustion] must be completed before suit is filed." (internal citation omitted)).

Now, for the first time in opposition, Plaintiff alleges that he wrote to CORC on September 5, 2011, and has produced a copy of what he contends to be that letter.  (*See generally* Pl. Opp. Ex. A 40-43).  Even accepting this fact as true, this letter still does not constitute an appeal to CORC.  First, Plaintiff has failed to allege or show that he completed or submitted Form #2133, as he is required to do.  *See* 7 N.Y.C.R.R. § 701.5(d)(1)(i) ("If the grievant or any direct party wishes to appeal to the CORC, he or she *must complete* and sign form #2133 and submit it to the grievance clerk within seven calendar days after receipt of the superintendent's written response to the grievance." (emphasis added)); *See Bennett*, 2013 WL 1798001, at *5 (administrative remedies not exhausted where the plaintiff alleged that he wrote to CORC, but not that he submitted a required Form #2133 to CORC).  Plaintiff has similarly failed to allege or show that he was prevented in any way from obtaining this form.  Second, Plaintiff's August 2, 2011 and August 9, 2011 letters did not constitute proper Level 1 grievances, so he could not appeal from those grievances to CORC.  In other words, even if Plaintiff had written to CORC in September 2011, that submission would not cure his previous failures to follow IGP regulations with respect to the prior steps of the grievance process.

Moreover, even accepting as true that Plaintiff's letter constituted an appeal to CORC, Plaintiff has failed to allege or show that CORC rendered a

final decision on his appeal.  "A final decision by the CORC is required in order to exhaust administrative remedies, and because there is no indication that Plaintiff ever received such a decision, he has failed to exhaust his administrative remedies." *Bennett*, 2013 WL 1798001, at *5 (citing, *inter alia*, *Torres* v. *Carry*, 672 F. Supp. 2d 338, 344 (S.D.N.Y. 2009) ("The Court declines to find that Torres has fully exhausted his administrative remedies even though he has allegedly complied with all of the steps required of him under applicable DOCS regulations because there is no evidence that a final decision by the CORC has been rendered on Torres's appeal.")).  Plaintiff has failed to show that he properly completed any of the three steps of the grievance process related to the July 15 incident.  On this basis, the undisputed facts reveal that Plaintiff has failed to exhaust his administrative remedies.

### 3.   No Exceptions Excuse Plaintiff's Failure to Exhaust

Plaintiff's failure to exhaust is not necessarily a complete bar to this action.  In *Hemphill*, the Second Circuit recognized three exceptions to the "strict bar" of exhaustion: when (i) "administrative remedies are not available to the prisoner"; (ii) "defendants have either waived the defense of failure to exhaust or acted in such [a] way as to estop them from raising the defense"; or (iii) "special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero* v. *Cnty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill*, 380 F.3d at 686).  While the Second Circuit has left unresolved the continuing vitality of the *Hemphill* exceptions in light of the

Supreme Court's ruling in *Woodford* v. *Ngo*, *Hemphill* remains good law, and the Court must therefore consider whether any exceptions apply to Plaintiff's failure to exhaust.  *See Amador* v. *Andrews*, 655 F.3d 89, 102 (2d Cir. 2011) (recognizing that *Woodford* called the latter two *Hemphill* exceptions into question but declining to resolve the issue); *but see Messa* v. *Goord*, 652 F.3d 305, 309-10 (2d Cir. 2011) (treating the *Hemphill* exemptions as good law and finding that a prisoner is not entitled to a jury trial on the issue of whether he has asserted a valid excuse for non-exhaustion).

### i.        Administrative Remedies Were Available

First, Plaintiff has failed to demonstrate that administrative remedies were unavailable to him.  In fact, Plaintiff concedes that "administrative remedies were available at Downstate," but contends that they were not "offered" to him in the SHU because he did not have access to grievance forms. (Pl. Opp. 10-11).[11]  A correctional facility's failure to make forms available does not relieve a prisoner from the obligation to undertake "reasonable efforts" to effectuate an appeal.  *Clarke* v. *Thornton*, 515 F. Supp. 2d 435, 439 (S.D.N.Y. 2007).  "Similarly, an inmate's refusal to take actions that could lead to a resolution of the dispute does not render the administrative process unavailable." *Id.* (citing *Hamlett* v. *Srivastava*, 496 F. Supp. 2d 325 (S.D.N.Y. 2007) (finding that a prisoner who refused to sign a grievance form prepared on

---

[11]      Defendants contend that New York State regulations require DOCCS to provide grievance forms and access to the grievance process to all inmates housed in the SHU. (*See* Def. Reply 3 n.2).  Plaintiff correctly notes that this does not disprove his claim that grievance forms were not provided to him.  (Pl. Reply 4).  The Court accepts his allegation as true for the purposes of this Opinion.

his behalf by prison official, on grounds that form misrepresented his claims, failed to exhaust administrative remedies and was barred from action in federal court)).

Prisoners are not required to submit a grievance form to the IGRC, and may instead submit their Level 1 grievance on plain paper.  *See Hemphill*, 380 F.3d at 690 (citing 7 N.Y.C.R.R. § 701.7(a)(1)).  Plaintiff had access to plain paper as of at least August 2, 2011.  Plaintiff has alleged no reason why, if Plaintiff could write to Superintendent Perez on August 2, 2011, he could not also write to the IGRC to grieve the July 15 incident.  Moreover, Plaintiff himself categorizes his August 2, 2011 letter as an "actual grievance," and thus, by his own admission, Plaintiff had the ability and opportunity to grieve the July 15, 2011 incident within the relevant time period.  (Pl. Opp. 4).  Plaintiff has failed to allege or show that the grievance process was unavailable; instead, the evidence indicates that Plaintiff simply chose not to follow that process.  *See, e.g.*, *Davis* v. *Torres*, No. 10 Civ. 0308 (NRB), 2011 WL 3918098, at *6 (S.D.N.Y. Aug. 29, 2011) ("Plaintiff's contention that he continuously filed grievances and sent letters to prison officials belies his claim that grievances were unavailable to him, or that he was deterred from filing them."); *Harrison*, 2009 WL 1605770, at *6 (rejecting a claim that remedies were unavailable where petitioner "continued to file grievance after grievance"); *see also Snyder* v. *Whittier*, 428 F. App'x 89, 92 (2d Cir. 2011) (summary order) ("[Petitioner's] assertion that he feared retaliation in the first place … is belied by his testimony that he complained … within two hours of the assault…. Our

25

conclusion is further underscored by the fact that [petitioner] complained to no less than four other individuals about the attack, between the time he disclosed details of the attack to [the officer], and the time when he finally attempted to file a formal grievance.").  Because Plaintiff submitted what he believed to be a grievance on August 2, 2011, he cannot simultaneously contend that he was meaningfully deterred from doing so.

### ii.  Defendants Are Not Estopped From Asserting This Defense

Second, Plaintiff has failed to allege or show that Defendants have forfeited their right to raise this affirmative defense.  As an initial matter, Defendants have not waived the defense because they have asserted it in their motion to dismiss.  Next, "[a] defendant may be estopped from asserting non-exhaustion where he takes some action to inhibit an inmate from accessing available administrative remedies."  *Martin* v. *City of New York*, No. 11 Civ. 600 (PKC) (RLE), 2012 WL 1392648, at *7 (S.D.N.Y. Apr. 20, 2012) (citing *Hemphill*, 380 F.3d at 686).  "[V]erbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers constitute such affirmative action."  *Amador*, 655 F.3d at 103 (citing *Hemphill*, 380 F.3d at 688, and *Ziemba* v. *Wezner*, 366 F.3d 161, 162 (2d Cir. 2004)).  Plaintiff argues that because he was not provided with grievance forms in the SHU, and because Superintendent Perez submitted a "late" response to his July 7, 2011 grievance, Defendants are estopped from asserting this defense.  (Pl. Opp. 11-12).

26

First, inasmuch as Superintendent Perez is not a defendant to this action, her delay in responding to Plaintiff's July 7, 2011 grievance does not estop Defendants from asserting this affirmative defense.  Even if she were a defendant, however, Plaintiff was obligated to continue the IGP process, even if he failed to receive a timely response.  *See* n.10, *supra.*  Moreover, the July 7, 2011 grievance did not relate to the July 15, 2011 incident complained of herein, and thus any late response to that grievance is irrelevant here.

Second, failure to provide grievance forms may estop a defendant from asserting this defense in certain circumstances.  However, the Second Circuit has cautioned that those circumstances only include cases in which "[a] prisoner alleged that defendants took *affirmative action* to prevent him from availing himself of grievance procedures."  *Ruggiero*, 467 F.3d at 178 (emphasis added) (citing, *inter alia*, *Ziemba*, 366 F.3d at 162 (estoppel may be appropriate where prisoner claimed that he was beaten, threatened, and denied grievance forms and writing materials)); *see also Sandlin* v. *Poole*, 575 F. Supp. 2d 484, 487 (W.D.N.Y. 2008), (estoppel appropriate where defendants were alleged to have failed to provide grievance forms in the SHU, prevented plaintiff from filing grievances and appeals, and denied him access to books and reference materials that explained the grievance process).

Plaintiff has failed to allege that Defendants were in any way involved in the lack of grievance forms in the SHU.  Plaintiff does not allege, or offer any evidence tending to suggest, that any of the Defendants threatened Plaintiff in

27

any way, refused to accept his grievances,[12] denied him access to grievance forms, provided misinformation about the IGP, or even had any involvement with Plaintiff after July 15, 2011. *See Swanston* v. *Dep't of Corr.*, No. 11 Civ. 1219 (CM), 2011 WL 5105489, at *3 (S.D.N.Y. Oct. 27, 2011) (rejecting estoppel argument where plaintiff "does not allege, and has offered no evidence tending to suggest, that he was in any way prevented or impeded from exhausting his administrative remedies, or misled into thinking [that] he did not need to do so."); *Toliver* v. *Dep't of Corr. N.Y.C.*, No. 10 Civ. 5807 (PGG), 2012 WL 4044627, at *5 (S.D.N.Y. Sept. 11, 2012) (same). Because Plaintiff has failed to allege any facts demonstrating any personal involvement of Defendants, they are not estopped from asserting this defense. *See, e.g.*, *Pagan* v. *Westchester Cnty.*, No. 12 Civ. 7669 (PAE) (JCF), 2014 WL 982876, at *14 (S.D.N.Y. Mar. 12, 2014) (rejecting estoppel argument where "[t]here is no indication that [plaintiff] actually filed grievances or was prevented from doing so.... Furthermore, these plaintiffs do not indicate who was involved in any potential obstructive conduct or when such conduct occurred."); *Williams* v. *Dep't of Corr.*, No. 11 Civ. 1515 (SAS), 2011 WL 3962596, at *5 (S.D.N.Y. Sept. 7, 2011) (dismissing Section 1983 claim where there was no "allegation that defendant took any action to

---

[12]    Plaintiff alleges that his mail was tampered with while he was in the SHU. (*See* Pl. Opp. 3). However, Plaintiff does not allege who tampered with his mail, or whether that tampering related in any way to his failure to exhaust his administrative remedies. Accordingly, the Court disregards this conclusory allegation. *See Brown* v. *Fischer*, No. 11 Civ. 6065 (MAT), 2013 WL 5567503, at *6 (W.D.N.Y. Oct. 8, 2013) (citing *Gilliam* v. *Quinlan*, 608 F. Supp. 823, 838 (S.D.N.Y. 1985) (dismissing as vague and conclusory inmate's mail-tampering claim, where neither in his complaint nor in his subsequent papers did inmate point to specific instances of such alleged tampering or identify who allegedly tampered with it)).

inhibit plaintiff from participating in [the IGRP] procedure"); *Butler* v. *Martin*, No. 07 Civ. 521 (FJS) (GHL), 2010 WL 980421, at *5 (N.D.N.Y. Mar. 15, 2010) ("Even if, as alleged, Plaintiff's grievances were discarded, Plaintiff offers no evidence that a particular officer discarded the grievances.").

### iii.     No Special Circumstances Excuse Plaintiff's Failure to Exhaust

Third, Plaintiff has not demonstrated that any special circumstances would excuse his failure to exhaust. When considering whether special circumstances exist, a court should look "at the circumstances which might understandably lead usually uncounseled prisoners to fail to grieve in the normally required way." *Brownell* v. *Krom*, 446 F.3d 305, 312 (2d Cir. 2006) (internal citation and quotation marks omitted). "[S]pecial circumstances may exist where the prison grievance regulations are confusing and the prisoner relies upon a reasonable interpretation of those regulations." *Chavis*, 333 F. App'x at 643 (internal citations omitted). The "special circumstances" exception for failure to exhaust has typically been applied "where plaintiffs acted pursuant to reasonable interpretations of the regulations, thus preventing exhaustion." *Winston* v. *Woodward*, No. 05 Civ. 3385 (RJS), 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008) (internal citations omitted); *see also Brownell*, 446 F.3d at 312 (finding special circumstances where the plaintiff had been directed to file a grievance and abandon a reimbursement claim by corrections personnel, only to have his grievance ignored as duplicative of his reimbursement claim). Indeed, "[a]bsent an allegation by the inmate that his failure to exhaust was based on a reasonable, but erroneous

interpretation of prison regulations, the special exception is generally inapplicable." *McDowall* v. *Metropolitan Correction Center*, No. 08 Civ. 8239 (BSJ), 2010 WL 649744, at *7 n.4 (S.D.N.Y. Feb. 22, 2010) (collecting cases).

Plaintiff does not allege that his failure to exhaust was based upon a "reasonable, but erroneous interpretation" of the IGP regulations.  Prior to the briefing of this motion, Plaintiff contended that his persistent letter-writing in 2011 and 2012 had exhausted his administrative remedies.  (*See* Kim Decl. Ex. A 4 (Plaintiff arguing that his administrative remedies were exhausted, "[c]onsidering the persistent series of steps" that Plaintiff took to do so)).  In opposition, Plaintiff now contends that his August 2, 2011 letter constituted a grievance under the expedited program for harassment grievances.  (Pl. Opp. 4-5).  While Plaintiff's erroneous understanding of the grievance procedures is apparent from his opposition papers, he has nowhere alleged that this understanding is a reasonable interpretation of the IGP regulations, and it is not.  The regulations quite clearly state that whether an inmate's grievance alleges harassment or not, it must be submitted in the first instance to the IGRC, not the Superintendent.  *See* 7 N.Y.C.R.R. §§ 701.8(a), 701.5(a); *Hemphill*, 380 F.3d at 689-90.

Moreover, the Court has already found that the grievance process was available to Plaintiff.  In fact, Plaintiff filed a grievance alleging staff harassment on July 7, 2011, through the proper channels; he cannot now contend that he developed an erroneous understanding over the intervening month.  Plaintiff has failed to demonstrate that any special circumstances would excuse his

failure to exhaust.  *See Boddie* v. *Bradley*, No. 99 Civ. 1016, 2006 WL 162996, at *3 (N.D.N.Y. Jan. 20, 2006), *aff'd*, 228 F. App'x 5, 7 (2d Cir. 2006) (summary order) (special circumstances inapplicable because inmate did not rely on allegedly unclear state prison regulations); *see also Berry* v. *Kerik*, 366 F.3d 85, 88 (2d Cir. 2004) (finding no special circumstances because administrative remedies were available to prisoner during periods of incarceration); *Houston* v. *Cnty. of Westchester Dep't of Corr.*, No. 06 Civ. 3395 (DC), 2006 WL 3498560, at *3 (S.D.N.Y. Dec. 5, 2006) (rejecting special circumstances exception where administrative remedies were available).

A prisoner may not choose the way in which he exhausts his administrative remedies; he must instead follow the procedure set forth by the state.  *Macias*, 495 F.3d at 41 ("a prisoner must 'compl[y] with the system's critical procedural rules' because '[a] prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction' and '[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance'" (quoting *Woodford*, 548 U.S. at 95)).  Here, Plaintiff was plainly aware of the grievance process, yet chose not to follow that process for the July 15 incident.  That Plaintiff received no response to his previous grievance or various letters is of no moment; Plaintiff was obligated to exhaust his administrative remedies by following the IGP.  Having failed to do so, he is similarly barred from bringing this action in federal court.  *See Garcia*, 2013 WL 3237445, at *7 ("Plaintiff was not physically

incapable of filing an appeal — he filed letters, petitions, and FOIA requests at and after the time when he should have been filing his appeal.  Had Plaintiff not chosen 'alternative' avenues of complaint, he would not be in the position he occupies today — which is, out of court.").

"Where, as here, a prisoner has failed to exhaust his available administrative remedies, the law is clear that the appropriate disposition of the unexhausted claims is dismissal without prejudice."  *Bennett*, 2013 WL 1798001, at *7 (collecting cases).  "This is so even when the issue is decided on a motion for summary judgment, particularly because failure to exhaust administrative remedies is often a temporary, curable procedural flaw."  *Id.* (internal citations and quotation marks omitted).

## CONCLUSION

For the reasons discussed herein, Defendants' motion to dismiss is converted to a motion for summary judgment and is GRANTED. Plaintiff's complaint is dismissed without prejudice. The Clerk of Court is directed to terminate Docket Entry 55 and to mark the case as closed.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge* v. *United States*, 369 U.S. 438, 444-45.

SO ORDERED.

Dated   May 30, 2014
      New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

---

*A copy of this Order was mailed by Chambers to:*

Shadron Rambert
Din # 11-A-2218
Attica Correctional Facility
639 Exchange St.
Attica, NY 14011-0149

---